1 | Jonathan Shub (SBN 237708)
shublaw@gmail.com
2 | **SHUBLAW, LLC**
1818 Market Street
3 | Philadelphia, PA 19102
Phone: (610) 453-6551
4 | Fax:   (215)569-1606

5 | Jeffrey K. Berns, Esq. (SBN 131351)
jberns@law111.com
6 | **ARBOGAST &BERNS**
7 | 6303 Owensmouth Ave., 10th Floor
Woodland Hills, CA 91367-2263
8 | Phone: (818) 961-2000
Fax:   (818) 936-0232
9 |

10 | Attorneys for Plaintiffs and all others Similarly Situated

11 |

BY:
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
10 AUG 31 PM 2:58
FILED

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

VICTOR GREENWOOD, WENDY
VAUGHN, and GREGORY
ANDREWS, individually, and on
behalf of all others similarly situated,

　　　　　　Plaintiffs,

　　v.

VERIZON WIRELESS TELECOM,
INC., and DOES 1 through 10
inclusive,

　　　　　　Defendants.

CASE NO. **CV10  6518** GW(AGRx)

CLASS ACTION COMPLAINT FOR:
(1)　Violation of California's Consumer
　　　Legal Remedies Act ("CLRA"), Civ.
　　　Code §§ 1750 *et seq.*; and

(2)　Violation of California's Unfair
　　　Competition Law ("UCL"), Bus. &
　　　Prof. Code §17200, *et. seq.*

BY FAX

**JURY TRIAL DEMANDED**

Plaintiffs, VICTOR GREENWOOD, WENDY VAUGHN and GREGORY ANDREWS ("Plaintiffs"), individually and on behalf of all others similarly situated allege as follows:

## I.

## INTRODUCTION

1.     This class action is brought on behalf of cell phone subscribers to Defendants' cellular telephone network, who were charged a premium text message charge by Defendants, for gambling and/or illegal lotteries in violation of California's Consumer Legal Remedies Act ("CLRA"), Civ. Code §§ 1750 *et seq.*, and California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.,*

2.     Plaintiffs VICTOR GREENWOOD, WENDY VAUGHN and GREGORY ANDREWS individually, and on behalf of all others similarly situated, brings this class action against Defendant VERIZON WIRELESS TELECOM, INC., and DOES 1-10 (collectively "Defendants"), based, in part, on Defendants' participation in an on going illegal lottery, which includes charging and collecting ninety-nine (99) cents per lottery ticket.

## II.

## THE PARTIES

3.     Plaintiff VICTOR GREENWOOD is, and at all times relevant to this Complaint, was an individual residing in Los Angeles County, California.  Plaintiff Greenwood placed numerous premium text message calls through Defendant VERIZON WIRELESS' cellular telephone network during the liability period.  Defendant VERIZON WIRRELESS charged Mr Greenwood $0.99 for each premium text message to engage in the illegal gambling and/or illegal lotteries as alleged herein.  Accordingly, Mr. Greenwood has suffered damages and lost money as a result of the illegal conduct alleged herein.

4.     Plaintiff WENDY VAUGHN is, and at all times relevant to this Complaint, was an individual residing in San Diego County, California.  Plaintiff Vaughn placed numerous premium text message calls through Defendant VERIZON WIRELESS' cellular telephone network during the liability period.  Defendant VERIZON WIRRELESS charged Ms VAUGHN $0.99 for each premium text message to engage in the illegal gambling and/or illegal lotteries as alleged herein.  Accordingly, Ms. VAUGHN has suffered damages and lost money as a result of the illegal conduct alleged herein.

5.     Plaintiff GREGORY ANDREWS is, and at all times relevant to this Complaint, was an individual residing in San Bernardino County, California.  Plaintiff Andrews placed numerous premium text message calls through Defendant VERIZON WIRELESS' cellular telephone network during the liability period.  Defendant VERIZON WIRRELESS charged Mr Andrews $.99 for each premium text message to engage in the illegal gambling and/or illegal lotteries as alleged herein.  Accordingly, Mr. Andrews has suffered damages and lost money as a result of the illegal conduct alleged herein.

6.     Defendant VERIZON WIRELESS TELECOM, INC. ("VERIZON WIRELESS"), is a Delaware corporation licensed to do, and is doing business in California.  At all relevant times hereto VERIZON WIRELESS was and is engaged in the business of providing cell phone service to subscribers on their cellular telephone network.  VERIZON WIRELESS transacts business in Los Angeles, California and at all relevant times promoted, marketed, distributed, sold and provided wireless telephone service to consumers throughout the United States, including Los Angeles County, California.  VERIZON WIRELESS has significant contacts with Los Angeles County, California, and the activities complained of herein occurred, in whole or in part, in Los Angles County, California.

7.     Defendants, VERIZON WIRELESS and DOES 1 through 10, shall hereinafter be referred to collectively as "Defendants."

8.    At all times mentioned herein, Defendants, and each of them, have engaged in the running and promoting a lottery to subscribers of Defendants' wireless network.

9.    Plaintiffs are informed, believe, and thereon allege that at all times material hereto and mentioned herein, each of the Defendants (both named and DOE defendants) sued herein were the agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining Defendants and were at all times acting within the purpose and scope of such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego, partnership or employment and with the authority, consent, approval and ratification of each remaining Defendant.

10.    At all times herein mentioned, each Defendant was the co-conspirator, agent, servant, employee, assignee and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the permission and consent of each of the other Defendants.

11.    Plaintiffs are informed, believe, and thereon allege, that at all times material hereto and mentioned herein, each of the Defendants (both named and DOE defendants) sued herein were the agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining Defendants and were at all times acting within the purpose and scope of such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego, partnership or employment and with the authority, consent, approval and ratification of each remaining Defendant.

12.    At all times herein mentioned, each Defendant was the co-conspirator, agent, servant, employee, assignee and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the permission and consent of each of the other Defendants.

13.    Plaintiffs are informed, believe, and thereon allege that each and all of the aforementioned Defendants are responsible in some manner, either by act or omission, strict liability, fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise, for the occurrences herein alleged, and that Plaintiffs'

injuries, as herein alleged, were proximately caused by the conduct of Defendants.

14.    Plaintiffs are informed, believe, and thereon allege, that Defendants, VERIZON WIRELESS and DOES 1-10, and each of them, are, and at all material times relevant to this Complaint, performed the acts alleged herein and/or otherwise conducted business in California.  Defendants, and each of them, are corporations or other business entities, form unknown, have, and are doing business in this judicial district.

15.    The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiffs at this time, and Plaintiffs therefore sues said Defendants by such fictitious names.  Plaintiffs allege, on information and belief, that each Doe defendant is responsible for the actions herein alleged.  Plaintiffs will seek leave of Court to amend this Complaint when the names of said Doe defendants have been ascertained.

16.    Plaintiffs are informed, believe, and thereon allege, that at all times mentioned herein, Defendants, and each of them, including without limitation those Defendants herein sued as DOES, were acting in concert or participation with each other, or were joint participants and collaborators in the acts complained of, and were the agents or employees of the others in doing the acts complained of herein, each and all of them acting within the course and scope of said agency and/or employment by the others, each and all of them acting in concert one with the other and all together.

## III.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 (diversity of citizenship) and the Class Action Fairness Act of 2005, Pub. L. 109-2 (Feb. 18, 2005).  The amount in controversy exceeds $5,000,000.

18.    This Court has personal jurisdiction over the parties in this action by the fact that Defendants are either individuals who reside in this District within California or are corporations duly licenced to do business in California.

19.     Venue is proper within this District and Division pursuant to 28 U.S.C. §1391 and/or Pub. L. 109-2 because a substantial part of the events and omissions giving rise to the claims occurred in this district, and because there is personal jurisdiction in this district over the named Defendant because it regularly conducts business in this judicial district.

## IV.

## FACTS COMMON TO ALL CAUSES OF ACTION

20.     VERIZON WIRELESS provides cellular telephone service to Plaintiffs and the Class members by monthly subscription plans which include text messaging with a fixed rate based on bandwidth usage.  The monthly service plans do not include charges for the premium text messaging charges at issue in this action.

21.     Premium text messages are messages that carry charges ("premium charges") in excess of the monthly subscription plan, and are charges over and above the charges for regular text messages, such as between family members.  The premium charges are typically related to business arrangements between VERIZON WIRELESS and third parties, and are shared between VERIZON WIRELESS and these third parties.

22.     VERIZON WIRELESS entered into a business relationship with DOES 1 through 10 and other third party content providers (collectively "Defendants") to levy premium charges as the fee to enter games of chance.  In particular, Defendants permitted Plaintiffs and other cell phone subscribers to play the "lucky case game" relating to a television show Deal or No Deal, "Sole Survivor" relating to the television show Survivor and numerous of other contests, to enter the chance to win thousands of dollars.

23.     For example, in the "lucky case game" cell phone subscribers, like the contestants on the television program, try to guess in which of a series of briefcases the money will be found.  For these cell phone subscribers, the challenge is to guess which briefcase has $10,000 dollars in it. To make their guess, Plaintiffs and the Class members enter Short Messaging Service code ("SMS") on their cell phone, such as 59595, along

with the number or key corresponding to their guess.  For example, one subscriber might text to 59595 and the number 1, meaning they are betting that the $10,000 is in briefcase number one (1).  Along with every guess sent via text message, the subscriber is given one entry into the prize drawing.  A reply text confirming entry follows once a text message entry is received.  Plaintiffs are informed and believe that for many of these premium text message "replies," Plaintiffs and the Class members were charged and paid these subsequent premium text messages.

24.    At all times relevant during the liability period, the premium charge of $0.99 purchased nothing except a chance to win a prize.  The games were not used as a sweepstakes to promote a product, but rather were illegal lotteries designed to generate revenues far in excess of the value of the cash awarded.

25.    The chances of winning are infinitesimally less than the odds posed by the number of choices offered.  Having placed their $0.99 wager with and through Defendants along with the hundreds or thousands (if not tens of thousands) of other subscribers, only those individuals who selected the correct answer are even entered into a subsequent pool of those who guessed correctly.  From that pool of entrants, one random winner is selected to receive the cash prize.  The first randomly selected potential winner for each episode that answers or returns the notification phone call is declared the winner (subject to verification and satisfaction of other miscellaneous conditions, such as proof of age.).

26.    At all times relevant during the liability period, the premium text messaging was the primary means of entry in the contest.  It was the easiest and most expeditious manner of entering the lottery, which had the drawing for the winner within one hour of its start time.

27.    At all times relevant during the liability period, Defendant VERIZON WIRELESS did not provide PLAINTIFFS and the Class members with an alternative means of entry ("AMOE") through which subscribers could enter the contest without wagering money.

28.     At all times relevant during the liability period, Defendant Does 1 through 10 may have offered another manner to enter the lottery, but the online entry forms required much more information than the text message means of entry.  In addition to providing a telephone number, entrants were required to provide their full name, email address, date of birth and state of residence.  The entrants were also asked if they would like to receive emails, alerts and promotional offers.  Such additional information was a thing of value to Defendants and consideration provided by contestants for a chance to win.

29.     At all times relevant during the liability period, the detailed personal information collected by Defendants DOES 1 through 10 and the various other lottery related entities, was of value to Defendants, who benefitted from the information collected in that it provided them with valuable consumer information with which these Defendants used for future marketing and promotional schemes.

30.     At all times relevant during the liability period, Defendants DOES 1 through 10 did not advertise the AMOE with equal prominence as the text message method of entry; the invitation to enter the games of chance via the internet was substantially less conspicuous and announced far less frequently than the text message means of entry.

31.     Illegal gambling (including lotteries and other games of chance) consist of:

(a)     mandatory payment of a $0.99 premium text message fee was required to for players who wish to enter the Game via text message. Persons entering by text message pay $0.99 as consideration for the sole purpose of entering a lottery;

(b)     winners are chosen at random from all entries; and

(c)     weekly winners are awarded a valuable cash "prize" of $5,000 to $10,000.

32.     At all times relevant during the liability period, the contests are a lottery as defined by California Penal Code §319.  Defendants' operation of the various games game shows violate California Penal Code §§320, 321, and 322, which are

-8-

CLASS ACTION COMPLAINT

misdemeanors.

33.     Verizon Wireless maintained contracts with the subscriber-contestants which contained a purported class arbitration ban.  While this litigation does not implicate the contract, such a ban is unconscionable and unenforceable.   At all times during the relevant liability period, Defendant VERIZON WIRELESS drafted the contracts and did not allow Plaintiffs or the Class members any opportunity to make changes to the contract and, due to Defendant's superior bargaining position, the contract was offered on a take it or leave it basis.  As such, the contracts are contract of adhesion.  At all times relevant during the liability period, there existed a gross inequality of bargaining position which Defendant exploited unreasonably and unconscionably.  Further, PLAINTIFFS and the Class members were not made aware of and/or did not comprehend the meaning and importance of many terms of the contract, including the class arbitration ban. Finally, enforcement of a class arbitration ban would effectively end any legal challenge to the illegal practices at issue in this litigation.  As a result this extremely hars, one-sided provision is unconscionable and unenforceable.


## V.

## CLASS ACTION ALLEGATIONS

34.     Plaintiffs bring this action on behalf of themselves, and on behalf of all others similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure, Rules 23(a), and 23(b), and the case law thereunder.  The classes Plaintiffs seek to represent are defined as follows:

> **The California Class**:  All individuals residing in the State of California who, within the four year period preceding the filing of Plaintiffs' Complaint through the date notice is mailed to the Class, paid or incurred premium text message charges in connection with entering games of chance, and who have not won any prize.  Excluded from the California Class are Defendants' employees, officers, directors, agents, representatives, and their family members; and
>
> **The National Class**:  All individuals residing in the United States of America who, within the three year period preceding

the filing of Plaintiffs' complaint through the date notice is mailed to the Class, paid or incurred premium text message charges in connection with entering games of chance, and who have not won any prize. Excluded from the National Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

Plaintiffs reserve the right to amend or otherwise alter the Class definitions presented to the Court at the appropriate time, or propose or eliminate sub-Classes, in response to facts learned through discovery, legal arguments advanced by Defendants or otherwise.

35.   <u>Numerosity</u>:  The Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case.  While the exact number of Class members is unknown at this time, Plaintiffs are informed and believes that the Classes consists of approximately tens of thousands of members.

36.   <u>Commonality</u>:  Common questions of law or fact are shared by the Class members.  This action is suitable for class treatment because these common questions of fact and law predominate over any individual issues.  Such common questions include, but are not limited to, the following:

(a)   whether the games of chance constitute illegal gambling;

(b)   the extent of each Defendant's participation in conducting the Games;

(c)   Whether Defendants engaged in unfair business practices aimed at deceiving Plaintiffs and the Class members before and during the games of chance;

(d)   Whether Defendants, by and through their officers, employees and agents concealed, omitted and/or otherwise failed to disclose material information concerning the billing, method, purpose and legality of the text message lotteries;

(e)   Whether Defendants failed to disclose the billing, method, purpose and legality of the text message lotteries;

(f)   Whether Defendants' misleadingly portrayed the billing, method, purpose and legality of the text message lotteries;

(g)     Whether the terms and conditions of Defendants' contracts are
        unconscionable;

(h)     whether Defendants' conduct violates California's Unfair Competition
        Law ("UCL"), Bus. and Prof. Code § 17200 et seq;

(i)     Whether Defendant's conduct violates California's Consumer Legal
        Remedies Act ("CLRA"), Civ. Code §§ 1750 et seq;

(j)     whether Plaintiffs and the Class members are entitled to recover the
        premium text messaging fees paid to enter the games of chance;

(k)     the extent to which Plaintiffs and the Class are entitled to restitution,
        or other monetary remedies, as a result of the injuries they suffered;
        and

(l)     whether Defendants should be enjoined from continuing to promote
        and conduct the various games of chance.

37.     <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the Class members.
Plaintiffs and the other Class members were subjected to the same kind of unlawful
conduct and the claims of Plaintiffs and the other Class members are based on the same
legal theories.

38.     <u>Adequacy</u>:  Plaintiffs are adequate representatives of the Class because their
interests do not conflict with the interests of the other members of the Class Plaintiffs
seeks to represent.  Plaintiffs have retained counsel competent and experienced in
complex class action litigation and Plaintiffs intends on prosecuting this action
vigorously.  The interests of members of the Class will be fairly and adequately protected
by Plaintiffs and their counsel.

39.     <u>Ascertainable Class</u>:  The proposed Classes are ascertainable in that the
members can be identified and located using information contained in Defendants'
mortgage lending records.

40.     This case is brought and can be maintained as a class action under Rule

23(b)(1), 23(b)(2), and 23(b)(3):

    (a)   <u>Risk of Inconsistent Judgments</u>: The unlawful acts and practices of Defendants, as alleged herein, constitute a course of conduct common to Plaintiffs and each Class member.  Prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of individual Class members to protect their interests;

    (b)   <u>Injunctive and/or Declaratory Relief to the Class is Appropriate</u>: Defendants, and each of them, have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief with respect to the Class as a whole appropriate; and

    (c)   <u>Predominant Questions of Law or Fact</u>:  Questions of law or fact common to the Class members, including those identified above, predominate over questions affecting only individual Class members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would require.   Further, an important public interest will be served by addressing the matter as a class action.  The cost to the court system of adjudicating each such individual lawsuit would be substantial.

/ / /

**VI.**

**FIRST CAUSE OF ACTION**

**(Violations of the California's Consumer Legal Remedies Act ("CLRA"),**

**Cal. Civ. Code §§ 1750, *et seq.*)**

**(Against All Defendants)**

41.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

42.     The Consumer Legal Remedies Act ("CLRA") applies to Defendants' actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

43.     Plaintiffs and each member of the Classes are "consumers" within the meaning of Civil Code Section 1761(d).

44.     The premium text message lottery tickets that Plaintiffs and each member of the Classes purchased are "services" within the meaning of Civil Code Section 1761(a).

45.     Defendants, and each of them, have violated the CLRA in at least the following respects:

        a.      In violation of Section 1770(a)(5), Defendants have represented that the premium text messaging services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have.  In particular, Defendants represented that the premium text message charge was legal, and that entering the contest through the text message system was a legitimate use of the premium text messaging services.  Defendants also represented that to continue having access to cell phone services the illegal and illegitimate premium text messaging charges would have to be paid.

        b.      In violation of Section 1770(a)(9), Defendants have advertised premium text messaging services with an intent not to sell it as advertised.  In particular, Defendants billed for premium text message services that related to a lottery entry, however, the odds of winning the lottery and the grand prize were significantly less then Defendants made it appear.  Defendants charged, billed an collected for the lottery entries

1   and failed to provide details that the premium text charge was for an illegal use of the text
2   service.

3          c.      In violation of Section 1770(a)(14), Defendants have misrepresented
4   that the premium text messaging transaction confers or involves rights, remedies, or
5   obligations which it does not have or involve, or which are prohibited by law.  In
6   particular, Defendants have misrepresented that the text message lottery entry was a
7   legitimate and legal game, rather then the truth that it was an illegal lottery that would
8   provide significant illegal profits to Defendants, and very little chance of winning to
9   Plaintiffs;

10         46.     As set forth above, Defendants representations and omissions as printed in
11  the monthly bills they sent to Plaintiffs and others similarly situated are
12  misrepresentations and/or concealment of material facts that constitute unfair, deceptive,
13  and misleading business practices in violation of Civil Code § 1770(a).

14         47.     Defendants' deceptive acts and omissions occurred in the course of selling
15  and billing consumers for  access to Defendants wireless network.  Defendants have done
16  so continuously through the filing of Plaintiffs' Complaint.

17         48.     Defendants' deceptive acts and omissions, as set forth more fully herein,
18  were material to Plaintiffs and all other persons contemplating the purchase of the text
19  message lottery entries.

20         49.     At all times relevant, Defendants concealed material facts regarding the
21  premium text lottery entries.  This type of information, including the fact that this was a
22  legitimate and legal game that could be played on Defendants wireless network, and that
23  consumers had a fair chance of winning between $5,000 to $10,000, formed a basis of the
24  bargain upon which consumers relied upon in making their purchase decisions, and is
25  fundamental to the decision to purchase the premium text lottery entries.  Had Defendants
26  disclosed such information, it would have been known to Plaintiffs and other class
27  members through the marketing and advertising presented to Plaintiffs by Defendants,
28  retailers, resellers, the trade press and others.

50.     Had Defendants disclosed this material information regarding the premium text lottery entries to Plaintiffs and the other Class members, they would not have purchased them, and would have sought a full refund of all monies paid.

51.     As a direct and proximate result of Defendants violations of Civil Code Section 1770, *et seq.*, Plaintiffs and other Class members have suffered irreparable harm and monetary damages.  Plaintiffs, on behalf of herself and on behalf of the Class, seek damages, injunctive relief and all other relief allowable under the CLRA.

52.     Defendants' wrongful conduct, as set forth above, was willful, oppressive, immoral, unethical, unscrupulous, substantially injurious and malicious.  Accordingly, Plaintiffs seek punitive damages against defendant in an amount to deter defendant from similar misconduct in the future pursuant to Civil Code Section 1780 (a)(4).

53.     WHEREFORE, pursuant to the provisions of Civil Code § 1780, Plaintiffs are entitled to restitution and other appropriate equitable relief, an order enjoining Defendant from the unlawful practices described herein, as well as recovery of attorney's fees and cost of litigation.

## VII.

## SECOND CAUSE OF ACTION

**(Violation of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §17200 *et seq*.)**

**(Against All Defendants)**

54.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

55.     Plaintiffs brings this cause of action on behalf of themselves, on behalf of the Class, and in their capacity as a private attorney general against all Defendants for their unlawful, unfair, untrue and/or deceptive business acts and/or practices pursuant to California Business and Professions Code Sections 17200 et seq., which prohibits all unlawful, unfair and/or fraudulent business acts and/or practices.

56.     Plaintiffs assert these claims as the representative of an aggrieved group and as private attorney general on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies provided by California Business and Professions Code Sections 17200 et seq.

57.     The acts, misrepresentations, omissions, and practices of Defendants alleged above constitute unfair, unlawful and/or fraudulent business acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et seq.

58.     By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Business and Professions Code Sections 17200, et seq.

59.     Defendants' conduct, as fully described above, was likely to deceive members of the consuming public, and at all times, Defendant's statements and representations have been and continue to be unlawful, unfair, fraudulent, untrue and/or deceptive.

60.     Defendants' unlawful business acts and/or practice as alleged herein have violated numerous laws and/or regulations - federal and/or state, statutory and/or common law - and said predicate acts are therefore *per se* violations of §17200, *et seq.* These predicate unlawful business acts and/or practices include, but are not limited to the following: violation of California Penal Code § 310 (illegal lottery), violations of Business and Professions Code §17539.5, violations Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 41-58, and the Lanham Trade-Mark Act ("Lanham Act"), 15 U.S.C. §§ 1051-1127, California Civil Code § 1668 (Contracts contrary to policy of law), and Civil Code Sections 1770(a)(5), 1770(a)(9), 1770(a)(14), and 1770(a)(19).

61.     Defendants' misconduct as alleged herein constitutes negligence and other tortuous conduct and this misconduct gave Defendants an unfair competitive advantage over their competitors.

62.     As a direct and proximate result of the aforementioned acts, Defendants, and

each of them, received monies and continues to hold the monies expended by Plaintiffs and others similarly situated who purchased the lottery entries described herein.

63.    In addition to the relief requested in the Prayer below, Plaintiffs seek the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

64.    The harm to Plaintiffs, members of the general public and others similarly situated outweighs the utility of Defendants' policies, acts and/or practices and, consequently Defendants' conduct herein constitutes an unlawful business act or practice within the meaning of California Business & Professions Code Sections 17200 et seq.

65.    The unlawful, unfair, deceptive and/or fraudulent business practices and/or false and misleading advertising of Defendants, as fully described herein, present a continuing threat to members of the public to be mislead and/or deceived by Defendants billing, collecting and charging for games of chance as described herein.  Plaintiffs and other members of the general public have no other remedy of law that will prevent Defendants misconduct as alleged herein from occurring and/or reoccurring in the future.

66.    WHEREFORE, Plaintiffs and members of the Classes are entitled to equitable relief, including restitution, disgorgement of all profits accruing to Defendants because of their unlawful, unfair and fraudulent, and deceptive practices, attorneys fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their unlawful, unfair, fraudulent and deceitful activity.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and all Class members pray for judgment against each Defendants, jointly and severally, as follows:

A.    An order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B.    For equitable relief, including restitution;

C.    For restitutionary disgorgement of all profits Defendants obtained as a result

1    of their unfair competition;

2    D.    For interest as permitted by law;

3    E.    For Declaratory relief;

4    F.    For injunctive relief;

5    G.    For reasonable attorneys' fees and costs; and

6    I..   For such other relief as is just and proper.

7  DATED: August ___, 2010

8

9                                    By: _____
                                          **Jonathan Shub, Esq.**
10                                        **SHUBLAW LLC**
                                          1818 Market Street
11                                        Philadelphia, PA 19102
                                          Phone: (610) 453-6551
                                          Fax (215) 569-1606
12
                                          **Jeffrey K. Berns, Esq.**
13                                        **ARBOGAST & BERNS LLP**
                                          6303 Owensmouth Ave., 10th Floor
14                                        Woodland Hills, CA 91367-2263
                                          Phone: (818) 961-2000
15                                        Fax:  (818) 936-0232

16                                        **Paul Weiss, Esq.**
                                          **FREED & WEISS**
17                                        111 West Washington, Suite 1331
                                          Chicago, IL 60602
18                                        Phone: (312) 220-0000
                                          Fax:    (312)220-7777
19
20                                        Attorneys for Plaintiffs and all others Similarly
                                          Situated

21                                        _____
                                          **DEMAND FOR JURY TRIAL**
22

23          Plaintiffs  hereby demands a trial by jury to the full extent permitted by law.

24  DATED: August ___, 2010

25                                   By:  _____
                                          **SHUBLAW LLC**
26                                        **Jonathan Shub, Esq.**
                                          1818 Market Street
27                                        Philadelphia, PA 19102
                                          Phone: (610) 453-6551
                                          Fax (215) 569-1606
28

_____

                                                              CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Jeffrey K. Berns, Esq.**
**ARBOGAST & BERNS LLP**
6303 Owensmouth Ave., 10th Floor
Woodland Hills, CA 91367-2263
Phone: (818) 961-2000
Fax:  (818) 936-0232

**Paul Weiss, Esq.**
**FREED & WEISS**
111 West Washington, Suite 1331
Woodland Hills, CA 91367-2263
Phone: (312) 220-0000
Fax: (312)220-7777


Attorneys for PLAINTIFFS and all others
Similarly Situated

CLASS ACTION COMPLAINT